# Johnston's Estate.

If the administrators of an estate take a note, with security, payable in six months, for the assets of the intestate sold at vendue, and the payors fail before it becomes due, they will be exonerated from liability for it: but if the payors are able to pay when the note becomes due, and the administrators make no effort to collect it, and it becomes lost by the subsequent insolvency of the payors, they will be chargeable with the loss.

APPEAL from the decree of the Orphans' Court of *Lancaster* county by John Lang and James Perry, administrators of Dr Samuel A. Johnston, deceased. The Orphans' Court made the following decision and decree: —

Lewis (President). — The intestate died on the 26th November 1839, and letters of administration were taken out by the accountants on the 11th December 1839. On the 2d of January 1840, the accountants having sold to Benjamin Barr a portion of the assets of the estate, took his single bill, with that of John Barr as surety, for the sum of $201.48, payable six months after date. The debtor and his surety were good at the time, and if the demand had been pressed with proper diligence, it might have been recovered; but it appears that the principal debtor was not called upon for the payment until six months after the money was due, and that the surety has never been called upon for payment. That both were of ability to pay at the time the note fell due, on the 2d July 1840, and that both principal and surety made an assignment in April 1841, and subsequently took the benefit of the bankrupt law. In the first place, the accountants gave a credit of six months by the contract; they then, by their negligence, gave an additional credit of six months by omitting to call upon the principal debtor for payment. They have never demanded payment of the surety, who testifies that he would have paid it if demand had been made at the maturity of the note. No legal proceedings were instituted for the recovery. No reasons have been given for this delay.

Executors and administrators are sworn well and truly to administer according to law. The law requires them to file an account of their administration in one year from administration granted (14 section Act 15th March 1832), and the condition of the administration bond is to the same effect. From all these enactments it may be inferred that the duty of their office required that the accountants should make use of some efforts to collect the money within a year from the time of entering upon the trust. But no efforts whatever were used within that time, and no proper efforts afterwards. A mere application for payment without

[Johnston's Estate.]

legal proceedings will not excuse. It is the opinion of the court, that with proper diligence the debt might have been collected, and for this reason accountants ought to be charged with the amount lost by their neglect.

*N. Ellmaker*, for appellants, argued that trustees should only be charged with gross negligence, and cited 1 *P. Wms.* 142; 11 *Serg. & Rawle* 71; 12 *Serg. & Rawle* 334; 2 *Rawle* 122; 1 *P. R.* 207; 5 *Whart.* 476; 3 *Watts* 443; 6 *Watts* 188, 253; 8 *Watts* 21; 4 *Johns. Chan.* 628.

*Frazer*, contra, argued that there was such gross negligence that the administrators were liable.

The opinion of the Court was delivered by

ROGERS, J.—An executor is *primâ facie* liable for the appraised value of the personal estate, and it is his duty, within one year, at most, from the death of the testator, to sell or dispose of the deceased's effects, and convert them into ready money, to answer the purposes of the trust. In England the property is sold for cash, and, of course, the executor is immediately chargeable with the price; but in Pennsylvania, for reasons arising out of a different state of circumstances, another rule has been adopted. The practice is to sell at a short credit, taking notes, with security, over a certain amount, payable in three and six months. This is discretionary with the executor; and when the latter mode is adopted, he is not chargeable, when he acts with good faith and ordinary care, immediately on the sale, but he becomes liable at the expiration of the time of credit; and, to discharge himself, he must show that the money, if not received, was lost without any default or negligence on his part. Thus, if he is able to prove the solvency of the purchaser and surety at the time of sale, and that, in the intermediate time, he became insolvent, or that he used ordinary diligence to obtain payment, and failed, he is entitled to an exoneration. But this it is incumbent on the executor to prove, as he is *primâ facie* liable, and the burthen of proof is thrown on him. The intestate died on the 22d November 1839, and letters of administration were granted the 11th December 1839. On the 2d January 1840, the administrator sold to Benjamin Barr some articles belonging to the estate, and took his note for the amount, with security, payable six months after date. It is conceded the debtor and security were good at the time of the sale, so that the case depends on the question, whether the administrator has shown that the loss has arisen from circumstances over which he had no control, and not in consequence of any default of his.

The facts are, that he gives a credit of six months, and, so far as appears, takes no further steps to collect the amount due. He

[Johnston's Estate.]

neither commences suit, nor does he even demand payment until six months after the note arrived at maturity, and after the time given for the settlement of the estate. It is a case, not of ordinary care, but of gross negligence, for he has failed to show that he made any efforts whatever, in proper time, to recover the money. A mere application for payment, without more, would not have availed him. To entitle him to a credit, he must, in addition, prove that he took legal steps to recover the sum due, or that, from the notorious insolvency of the debtors, a suit would have been useless. But, so far from this being true, the probability is, that if ordinary diligence had been used, the money would have been recovered; as the proof is positive that the principal and surety were able to pay when the note fell due.

Decree affirmed.