D. J. Mitchell, Appellant, *v.* S. N. Logan.

*Malicious prosecution—Probable cause.*

Probable cause is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged. The test is the prosecutor's belief of the existence of probable cause at the time, based upon reasonable grounds.

In an action for malicious prosecution probable cause is shown where it appears that defendant had placed his satchel on the seat of the passenger car in which he was riding, and without his knowledge it had been removed and carried away by plaintiff, who in explanation said that he thought it belonged to a friend, and that after failing to find the supposed owner at the station kept it instead of returning it to the car or the station agent, and carried it a mile or more into the country and gave it to a stranger who said that he would give it to the owner.

| 172 | 349 |
| 21 SC | [1]472 |
| 21 SC | [2]473 |

| 172 | 349 |
| 23 SC | 400 |
| 23 SC | [1]418 |
| 172 | 349 |
| 28 SC | [1]131 |

| 172 | 349 |
| 31 SC | [1]566 |

| 172 | 349 |
| 216 | [1]262 |

| 172 | 349 |
| 220 | [1] 64 |

Argued Oct. 15, 1895. Appeal, No. 146, Oct. T., 1895, by plaintiff, from judgment of C. P. Armstrong Co., June T., 1893, No. 207, entering nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for malicious prosecution. Before RAYBURN, P. J.

At the trial it appeared that on June 10, 1891, defendant was a passenger in a train and had placed his satchel on the seat of the car in which he was riding. Some one removed the satchel without his knowledge. Defendant heard that the satchel had been seen in the possession of plaintiff, and he consequently had him arrested. Plaintiff waived a hearing but admitted that he had had the satchel. He testified as to the circumstances under which he had taken the satchel as follows:

" When I went down there to get off, before I got off, this Blair Taylor, this young fellow, had wanted me to take his satchel. I thought this was Blair Taylor's satchel until after I got off. When I got off the first man I met was A. T. Taylor, the owner of the satchel. I says, "Mr. Taylor, here is your satchel." He says, ' Yes,' or something like that, I just can't remember what he said. After we stood there just a short time the fellow that had this satchel came down, this Blair Taylor came down with the satchel. Taylor says, ' That isn't my satchel, it looks like it but it is not mine.' I says, ' I am going to put it on the car.' "

The Court: Just state what you did, not what you said.

" A. I took the satchel and crossed the river, we got off at Creighton, I think was the name of the place, I crossed the river and carried it probably a half a mile or three fourths up the other railroad, and I asked everybody I saw about the satchel, and nobody claimed it until I was nearly down to the sale, and I met two or three fellows walking along; I caught up with them—they were walking down kind of slow; I asked them if they knew anybody that lost a satchel. One fellow says "— " Q. What was done with the satchel? A. I give it to him and he said he would give it to the owner. Q. Did you ever see the satchel afterwards? A. No, sir, I did not."

When T. J. Van Geisen, an attorney at law, was on the stand he testified as to an interview with defendant as follows:

Q. Did you tell him you were going to write that letter? A. I don't remember I told him I was going to write a letter; I simply stated to him that ex-Judge SUTTON had asked me to see him to see if he could not stop the prosecution against Mr. Mitchell.   Q. What did Mr. Logan say?

Mr. Leason: No.

Mr. Patton: The declarations of the defendant are evidence against himself.   It is for the purpose of showing Mr. Logan's admissions and declarations that he would settle it for $175, and for the purpose of showing this prosecution was not being carried on in good faith but for the purpose of making money.

Mr. Leason: Defendant objects to the testimony, because if proven it would not be evidence from which malice could be inferred.

The Court: We will sustain the objection and give you an exception and sealed bill. [2]

Mr. Patton: We offer to prove by the witness on the stand that Mr. Logan, the defendant, offered to take $175 and settle the prosecution; this for the purpose of showing that the prosecution was being carried on for the purpose of making money and not for the purpose of subserving the ends of justice.

Mr. Leason: It appearing in evidence that the proposition conveyed by the witness to the defendant in this case came from the plaintiff in the case, it is not evidence to show want of probable cause or malice, and it is objected to as incompetent and irrelevant.

The Court: We will overrule the objection and let you get the evidence; but we will require you first to give the conversation, the request that was made by the agent of Mitchell when he went to Logan.   And we will give defendant an exception and sealed bill.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Errors assigned* were, (1) the refusal to take off nonsuit; (2) ruling on evidence, quoting the bill of exceptions.

*W. D. Patton, D. B. Heiner* and *Floy C. Jones* with him, for appellant.—Although at first the prosecution may not be malicious, yet if the prosecutor obtains knowledge of the innocence

of the defendant and perseveres in malo animo, he is guilty: Addison on Torts, sec. 855, Wood's ed. 1876; Townshend on Malicious Pros., 4th ed. sec. 425.

When a prosecution is instituted for the purpose of extorting money, the law implies both malice and want of probable cause: Prough v. Entriken, 11 Pa. 81; Schofield v. Ferrers, 47 Pa. 194; Schmidt v. Weidman, 63 Pa. 173; Kerr v. Workman, Bright. Dig. p. 1685, pl. 1; Addison on Torts, sec. 853.

*M. F. Leason,* for appellee.—Mitchell's conduct was very suspicious and dishonorable. He took that which did not belong to him. He did not return it to the rightful owner. He did not make reparation to the person injured, nor did he offer to do so. This amounted to probable cause: Berner v. Dunlap, 94 Pa. 359; Cooper v. Hart, 147 Pa. 598.

OPINION BY MR. JUSTICE FELL, January 6, 1896:

In an action to recover damages for a malicious prosecution a nonsuit was entered on the ground that the plaintiff had failed to show want of probable cause. The burden of doing this rested upon him, and under the undisputed testimony it was for the court to determine as matter of law whether it had been done. The testimony produced at the trial tended to show the plaintiff's innocence of the crime with which he had been charged, but the question of probable cause did not turn upon the actual innocence or guilt of the accused. Probable cause is a reasonable ground for belief, or, as defined by Judge WASHINGTON in Munns v. Dupont, 3 Washington's C. C. 31, it is "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." The test is the prosecutor's belief of the existence of probable cause at the time, based upon reasonable grounds.

The defendant had placed his satchel on the seat of a passenger car in which he was riding, and without his knowledge it had been removed and carried away by some one. Having learned that it had been seen in the possession of the plaintiff, he produced a warrant and went with a constable to cause his arrest. The plaintiff waived a hearing and entered bail for his

appearance. But he admitted that he had taken the satchel, and in explanation said he thought it belonged to a friend. When asked to produce it he stated that on his way home after leaving the car he gave it to a man whom he did not know, but who said that it belonged to a friend of his. There were further explanations to the effect that he had been in the car with a number of acquaintances and had taken the satchel under the belief that it belonged to one of them ; and that after failing to find the supposed owner at the station he kept it instead of returning it to the car, supposing that the owner had left the station in advance of him. His statement of the occurrence was confirmed by two or three persons who had been with him, but whether it was made before or after the arrest does not appear from the testimony. After all these explanations had been made the fact remained that the plaintiff had taken the satchel from the train, and that after learning of his mistake he had not returned it or left it with the station agent, or made any effort to enable the owner, if he was still on the train, to recover it ; but had carried it a mile or more into the country and given it to a person of whom he could give no account. Assuming his entire innocence he had acted imprudently and surrounded himself with the ordinary indications of guilt. His explanation might have been satisfactory to those who knew him, but it would have been so from their knowledge of him and not from its inherent probability. An entire stranger might well be excused for not giving it full credit.

Every public prosecution is presumed to have been begun and carried on in good faith, and to have been founded upon probable cause. These presumptions were not rebutted. The attempt to shift the burden by proof that the prosecution was continued for the purpose of extorting from the plaintiff remuneration for the defendant's loss failed utterly. The second assignment of error is without foundation in fact, as the offer objected to was subsequently admitted, and the plaintiff had the full advantage of testimony the competency of which is, to say the least, doubtful.

The judgment is affirmed.